IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

TOGETHER CREDIT UNION,
f/k/a ANHEUSER-BUSCH EMPLOYEES'
CREDIT UNION,

    Plaintiff,

vs.

ALLIED SOLUTIONS, LLC,
 **SERVE:  Registered Agent**
    **CSC-Lawyers Incorporating**
    **Service Company**
    **221 Bolivar Street**
    **Jefferson City, MO 65101**

    Defendant.

Case No.
Div.

## **PETITION**

  Plaintiff Together Credit Union, f/k/a Anheuser-Busch Employees' Credit Union, by and through its undersigned counsel, files this Petition against Allied Solutions, LLC, stating its claims as follows:

### **Allegations Common to All Counts**

### **Parties**

  1. Together Credit Union, formerly known as Anheuser-Busch Employees' Credit Union ("hereinafter referred to as "plaintiff" or "AB") is organized as a credit union and exists under the laws of the State of Missouri with its principal place of business at 423 Lynch Street, St. Louis, Missouri 63118.  Together Credit Union is the successor via name change of Anheuser-Busch Employees' Credit Union.

2.Allied Solutions, LLC ("hereinafter referred to as "defendant" or "Allied") is a limited liability company, organized and existing in accordance with the laws of the state of Indiana with its principal place of business in Indiana.

### Jurisdiction and Venue

3.The defendant is subject to the jurisdiction of this court by virtue of subsections (1), (2) and (5) of the long-arm statute of Missouri; §506.500, R. S. Mo.

4.Venue is proper in this circuit pursuant to §508.010, R. S. Mo.

### General Allegations

5.At all times relevant herein, the defendant served as the plaintiff's insurance broker, in which capacity defendant performed various services on behalf of the plaintiff. The services included providing recommendations for the type and amount of insurance coverage plaintiff required in the operation of its business.

6.In order to properly advise the plaintiff as to its insurance needs, the defendant became thoroughly educated on all operations and phases of the plaintiff's business.

7.At all times relevant herein, Allied held itself out and continues to hold itself out as having expertise in the insurance requirements of financial institutions, including plaintiff.

8.Plaintiff relied upon these representations and made its decisions on the type and amount of coverage based upon the recommendations of defendant.  Defendant was aware that plaintiff did not possess the skill or knowledge of a sophisticated insurance broker and that plaintiff was not able to provide the analysis required to evaluate insurance products to fit the needs of plaintiff's business operations and to properly protect plaintiff against known or potential risks. Instead, plaintiff relied upon defendant for those services.

9. Defendant, thereafter, placed the vast majority of plaintiff's liability coverage in Commercial General Liability policies and follow form excess liability policies (the "CGL Policies"). These policies did not include professional liability coverage provisions.

10. Moreover, the CGL Policies which defendant placed with Travelers included a professional liability exclusion which effectively excluded from coverage any form of liability which might have resulted from plaintiff's business operations as a financial institution.

11. On July 29, 2015, ABECU filed suit against Daniel P. Wells ("Wells") seeking a deficiency judgment for a 2010 Toyota Corolla which ABECU had previously repossessed and sold at auction.

12. On April 12, 2016, Wells filed an Answer and Counterclaim. The counterclaim alleged, inter alia, that the pre and post-sale notices AB sent to Wells had violated various provisions of the Uniform Commercial Code.

13. On May 5, 2016, Wells filed a First Amended Answer and Counterclaim in which the prior violations of Missouri law were re-alleged. The Amended Counterclaim included allegations seeking to certify a nationwide class action and Missouri sub-class action on the basis of the same violations.

14. The counterclaim also alleged that AB wrongfully accelerated consumer credit contracts on loans made to Wells and other consumers and wrongfully repossessed their collateral because AB either failed to send the Right to Cure notice required by the UCC and section 408.554 of the Missouri Revised Statutes or sent defective Right to Cure Notices before repossession.

15. The suit further alleged that when AB failed to include required information in the notices relating to redemption and sale of repossessed vehicles, the class members lost the use of their vehicles and were precluded from reclaiming their collateral before being sold.

16. The counterclaim also sought damages for defamation (slander and libel) plus invasion of privacy, harm to credit worthiness, standing, capacity, character, and reputation. The counterclaim alleged that ABECU published false, defamatory statements in its attempt to collect a debt. Specifically, the suit alleged that ABECU reported derogatory information regarding the class members to local consumer reporting agencies and the three national consumer credit reporting agencies.

17. The counterclaim also alleged that by sending the defective right to cure, presale and post-sale notices, and reporting false or inaccurate derogatory information on the class members' credit reports, the class members suffered harm to their credit worthiness, credit standing, credit capacity, character, and general reputation.

18. The counterclaim sought actual and statutory damages, prejudgment and post-judgment interest, punitive damages, costs and fees.

19. There were no allegations in the counterclaim that AB knowingly violated the UCC's notice provision, knowingly sent out defective notices, or knowingly reported false information to credit agencies as part of its collection efforts.

20. AB reported the filing of the Counterclaim to Allied for the purpose of providing notice of the claim to all carriers from whom AB had purchased insurance whose policies might potentially afford coverage for any or all the claims contained therein.

21. Of the carriers who were notified, all denied coverage outright with the exception of Travelers and Berkley Finsecure. These two carriers asserted coverage defenses in reservation of rights letters, but agreed to provide a defense to AB. Travelers subsequently withdrew its defense and denied the claim outright.

22. AB and their defense counsel concluded that the claims set forth in the Counterclaim were meritorious, that a class would likely be certified and that AB was exposed to the potential for a judgment in excess of $80,000,000.

23. Being faced with this potential exposure, all of which would be uninsured if Travelers and Berkley were correct on their coverage positions, AB and their counsel elected to settle the lawsuit and cap their exposure. The settlement called for a cash payment from AB of $19,750,000, as well as the forgiving of unpaid loan balances exceeding $30,000,000.

24. Undersigned counsel was engaged to pursue potential recoveries, resulting in settlements that are subject to confidentiality clauses.

25. A lawsuit was filed against Travelers, in which a federal judge in St. Louis granted summary judgment in favor of Travelers on the basis of that there was no coverage under their policies. That ruling is currently on appeal to the Eighth Circuit United States Court of Appeals.

26. In the relevant timeframe, roughly 2012 through 2018, the insurance coverages which the plaintiff selected based upon defendant's recommendations failed to adequately protect against the widely known risks that financial institutions faced with litigation arising out of violations of consumer protection laws. The potential for a claim such as the Wells class action was well known in the financial industry, and was or should have been recognized by Allied as an exposure that needed to be protected against through insurance.

27. As a direct result of Allied not recommending the appropriate type of coverage with policy limits that were reflective of the size and scope of the plaintiff's operations, plaintiff was woefully uninsured and underinsured.

Electronically Filed - City of St. Louis - July 07, 2020 - 09:44 AM

## COUNT I-NEGLIGENCE

28. Plaintiff realleges and adopts herein by this reference paragraphs 1-27 as though fully set forth herein.

29. As insurance broker to AB, Allied owed a duty of reasonable skill, care, and diligence in obtaining the insurance required by AB to protect against known and identifiable risks.

30. Allied violated its duty of care by failing to recommend the appropriate type of coverage with appropriate limits to protect against consumer class action litigation such as the Wells class action.

31. As a direct result of Allied's departure from the standard of care, AB sustained actual damages in excess of $40,000,000.

## COUNT II-BREACH OF FIDUCIARY DUTY

32. Plaintiff realleges and adopts herein by this reference paragraphs 1-27 as though fully set forth herein.

33. As AB's insurance broker, Allied owed fiduciary duties to its client, including the duty of loyalty and duty of care.

34. Allied violated its fiduciary duties by failing to recommend the appropriate type of coverage with appropriate limits to protect against consumer class action litigation such as the Wells class action.

35. As a direct result of Allied's violation of its fiduciary duties, AB sustained actual damages in excess of $40,000,000.

Electronically Filed - City of St. Louis - July 07, 2020 - 09:44 AM

WHEREFORE, Plaintiff prays for judgment against defendant for an amount in excess of $25,000 and for its costs incurred herein.

                Respectfully submitted:

                MARTIN, PRINGLE, OLIVER,
                  WALLACE & BAUER, L.L.P.

                By: /s/ David E. Larson
                David E. Larson, MO #27146
                One Main Plaza
                4435 Main Street, Suite 920
                Kansas City, MO 64111
                (816) 753-6006
                (816) 502-7898 fax
                delarson@martinpringle.com
                *Attorneys for Plaintiff*